# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | |
|---|---|
| **JIMMY RAY MILLS** | **CIVIL ACTION NO. 22-6250** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE TERRY A. DOUGHTY** |
| **JOHNNY HEDGEMON, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## REPORT AND RECOMMENDATION

Plaintiff Jimmy Ray Mills, a prisoner at Riverbend Detention Center ("RDC") proceeding pro se and in forma pauperis, filed this proceeding on approximately December 27, 2022, under 42 U.S.C. § 1983. He names the following defendants: Warden Johnny Hedgemon, Warden Robert Russell, Captain Calvin Barnes, RDC, Sheriff Wydette Williams, and Sergeant Brown.[1] For reasons that follow, the Court should dismiss Plaintiff's claims.

## Background

In his initial pleading, Plaintiff essentially alleged only that RDC lacks "proper medical staff for overnight med[ical] call for a person like [him] with anxiety, high blood pressure, and depression." [doc. # 1, p. 2].

In his second pleading, Plaintiff changes tack and claims that Sergeant Brown threatened to (1) tamper with his legal documents if he filed a lawsuit and (2) "lock [him] down." [doc. # 4, p. 2]. He also claims that Sheriff Williams did not ensure that his officers followed guidelines. *Id.* at 3. He adds that "they" have not answered his requests or grievances. [doc. # 4, p. 3].

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

In a later pleading, Plaintiff appears to return to his initial course, claiming that RDC "has no medical staff on hand on any night shift[,]" which "results in untrained security staff" attempting to do the job of a nurse or doctor. [doc. # 9, p. 2]. He alleges that when he goes to "pill call in the morning and at night [he] always [has] problems with the deputies who are not medically trained to pass out" medicine. *Id.* at 1. Deputies have given him incorrect medication. *Id.* He claims that RDC does not maintain on-site medical personnel "24/7 in case of an emergency . . . ." *Id.* at 2.

In his third pleading, Plaintiff appears to attempt to explain the allegations in his second pleading concerning lack of responses to his grievances and requests. [doc. # 5, p. 3]. For context, the undersigned presents the allegations verbatim: "I have been writing Request forms, and Nov the 21, 2022 about my situations about addresses, Transfer, and my medical condation for me not been homeless and for me to get the right benefits, They have not even answer the Emergency A.R.P. Kiosk or any request form on there since Nov 21, 2022. So I am bring everything to you all, they do not care at all, and talks to you crazy and threat to lock you down for them not doing they job. [sic]." *Id.*

Then, in Plaintiff's third pleading, he presents a litany of new allegations concerning air quality, temperature, second-hand smoke, sanitation, personal hygiene, and lighting. [doc. # 5, p. 6].

Also in his third pleading, Plaintiff presents new claims of lack of medical care, altering course from his previous allegations of lack of around-the-clock medical care. He alleges that when he arrived at RDC on November 18, 2022, he saw a doctor and a nurse and informed them of his need for treatment and therapy, but he was ignored. [doc. #s 5, p. 7]. In his fourth pleading, he explains that he told to the doctor and nurse that he was previously beaten by law

2

enforcement, in a slight coma, and had therapy to re-learn how to walk. [doc. # 9, p. 1]. He asked them for "medical treatment and medicine[,]" but the head nurse told him that he should not have come to jail, and the doctor refused to provide "proper medical treatment." *Id.*

Plaintiff began to suffer pain. [doc. # 5, p. 7]. He states: "Since then my health has worsen[ed] due to being denied medical treatment by the head of the medical station." [doc. # 9, p. 1]. He "wrote to Warden Jonny Hedgemon and Warden Robert Russell, but [he] never received a response." [doc. # 5, p. 7]. He "talked to the captain and deputies[,]" attempting to obtain medical care, but they "cursed [him] out and threatened [him][.]" *Id.* He mentions that his medications were "suppose[d] to [have] been upgrade[d] a month ago." *Id.* at 8. He "wrote [a] medical request concerning the pain [he] was suffering, but the request went unanswered." *Id.*

In his fourth pleading, Plaintiff presents other new claims, alleging that he is being denied a visit with a psychiatric doctor and an upgrade to his psychiatric medication. [doc. # 9, p. 2].

Plaintiff seeks a transfer to another facility and compensation for pain, suffering, and the denial of upgraded medication, doctor visits, and other medication. [doc. #s 5, pp. 4, 7-8; 9, p. 2].

### Law and Analysis

**1. Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[2] *See Martin v. Scott,* 156 F.3d

---

[2] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations

3

578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

---

of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

*Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra.*

In making this determination, the court must assume that all the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra.* A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

## 2. Medical Care

To plead a constitutional violation, a plaintiff "must demonstrate that a government official was deliberately indifferent to 'a substantial risk of serious medical harm.'" *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (*quoting Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)). A prison official acts with deliberate indifference to an inmate's health "only if he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *see Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994) (applying *Farmer* to a denial of medical care claim). A plaintiff must establish that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

"[N]either an incorrect diagnosis nor the failure to alleviate a significant risk that should have been perceived, but was not, is sufficient to establish deliberate indifference." *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016). "Unsuccessful treatment, medical malpractice, and acts of negligence do not constitute deliberate indifference; nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. Moreover, a delay in treatment is not unconstitutional, unless there has been deliberate indifference that results in substantial harm. In short, [d]eliberate indifference is an extremely high standard to meet." *Id.* (internal quotation marks and quoted sources omitted); *see Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."); *Frazier v. Keith*, 707 F. App'x 823, 824 (5th Cir. 2018) ("The choice between forms of treatment is a classic example of a matter of

professional judgment and does not support a finding of deliberate indifference.").

      A. <u>No Overnight Staff</u>

In his initial pleading, Plaintiff alleges that RDC lacks "proper medical staff for overnight med[ical] call for a person like [him] with anxiety, high blood pressure, and depression." [doc. # 1, p. 2]. In a later pleading, he claims that RDC "has no medical staff on hand on any night shift[,]" which "results in untrained security staff" attempting to do the job of a nurse or doctor. [doc. # 9, p. 2]. He alleges that when he goes to "pill call in the morning and at night [he] always [has] problems with the deputies who are not medically trained to pass out" medicine. *Id.* at 1. Deputies have given him incorrect medication; he told them that what they provided was incorrect. *Id.* He claims that deputies "should not be allowed to pass out medicine." *Id.* He also claims that RDC does not maintain on-site medical personnel "24/7 in case of an emergency . . . ." *Id.* at 2.

First, Plaintiff faults RDC only, but RDC is unamenable to suit. Federal Rule of Civil Procedure 17(b)(3) provides that the "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located . . . ." Under Louisiana law, an entity must qualify as a "juridical person," which is "an entity to which the law attributes personality, such as a corporation or partnership." LA. CIV. CODE art. 24. RDC does not qualify as a juridical person; accordingly, the Court should dismiss Plaintiff's claims against RDC.

Second, to the extent Plaintiff claims that a deputy(ies) gave him incorrect medication, Plaintiff pleads only potential negligence at best.[3] *See Boyd v. Mohammad*, 2000 WL 34532673, at *1 (5th Cir. Mar. 30, 2000) ("Boyd complains that . . . employees . . . repeatedly gave him an

---

[3] While not dispositive, Plaintiff describes his claims as "negligence and malfeasance." [doc. # 5, p. 7].

7

incorrect dosage of medicine, and gave him crushed, as opposed to whole, medication. These allegations show, at the most, negligence and do not rise to the level of a civil rights violation."); *Lee v. Richland Par. Det. Ctr.*, 483 F. App'x 904 (5th Cir. 2012) (finding that medical staff and officials at a detention center were not deliberately indifferent to a detainee's medical needs, even if there were a few instances of delay or error in administering medicine); *Boyd v. Monroe*, 772 F. App'x 92, 93 (5th Cir. 2019) (finding no Section 1983 claim where the plaintiff alleged that he did not receive all prescribed doses of his medications).

Third, to the extent Plaintiff claims that RDC lacks medical personnel on-site at all hours, he does not state a plausible constitutional violation. In *Brown v. Megg*, 857 F.3d 287, 290 (5th Cir. 2017), for instance, the court opined: "The magistrate judge also correctly rejected Brown's claims based on doctors not being on site around-the-clock. Brown cites no authority, and we have found none, requiring that as a general matter." The court cited with approval *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982), which noted that the Eighth Amendment requires that prison medical staff be "able to treat medical problems or to refer prisoners to others who can[.]" Likewise, in *Clyce v. Hunt Cnty., Tex.*, 515 F. App'x 319, 325 (5th Cir. 2013), the court opined that a "policy of not having an on-site medical provider" was not "itself unconstitutional . . . ." *See Anderson v. Marshall Cty., Miss.*, 637 F. App'x 127, 133-34 (5th Cir. 2016) (finding that a county could constitutionally balance inmate safety and fiscal prudence by "adopting a policy of calling for outside doctors instead of relying on in-house medical professionals.").

B. <u>Unidentified Doctor and Head Nurse</u>

Plaintiff alleges that when he arrived at RDC on November 18, 2022, he saw a doctor and head nurse and explained to them that he was previously beaten by law enforcement, was in a slight coma, and had therapy to re-learn how to walk. [doc. # 9, p. 1]. He claims that he asked

them for "medical treatment and medicine[,]" but the head nurse told him he should not have come to jail, and the doctor refused to provide "proper medical treatment." *Id.* Plaintiff states: "Since then my health has worsen[ed] due to being denied medical treatment by the head of the medical station." *Id.* He "wrote [a] medical request concerning the pain [he] was suffering, but the request went unanswered." *Id.*

First, Plaintiff does not name the doctor or head nurse as a defendant.[4] In addition, he seems to only fault RDC, alleging that all his pain, suffering, and denial of medical care "has been caused by Riverbend denying [him] proper medical treatment . . . ." [doc. # 9, p. 2]. As above, RDC is unamenable to suit.

Even assuming Plaintiff did seek relief from the unidentified doctor and head nurse, his claims are too conclusory to amount to plausible constitutional violations. He alleges that he was beaten by law enforcement at some unspecified time in the past and received therapy, but he does not state what his specific medical needs were when he requested care from the doctor and head nurse. The undersigned instructed Plaintiff to: "explain *what* he told the defendant or what medical care he requested; explain *why* he requested medical care (in other words, what were Plaintiff's medical needs/symptoms?); and explain *how* that defendant was deliberately indifferent to a substantial risk of serious medical harm to him." [doc. # 8, p. 2]. Plaintiff, however, only states vaguely that he requested therapy and "medical treatment and medicine[,]" only inviting the question, what medical treatment and medicine did he seek? [doc. #s 5, p. 7; 9,

---

[4] The undersigned instructed Plaintiff to "identify a responsible defendant(s)." [doc. # 8, p. 2].

p. 1]. He does not identify a serious medial need for which he requested care or a substantial risk of serious harm.[5]

Further, Plaintiff does not describe deliberate indifference. Rather, he suggests that a physician *did* evaluate him. *See Petzold v. Rostollan*, 946 F.3d 242, 250 (5th Cir. 2019) ("[B]ecause medical treatment was provided, even if it was . . . based on a perfunctory and inadequate evaluation, it was not denied.").[6] He states that the head nurse told him that he should not have come to jail, but he does not allege that the nurse refused to provide treatment. *See Baughman*, 935 F.3d at 310 (5th Cir. 2019) (concluding that a physician's statement that the detainee should not expect to receive pain management or other services he could obtain outside of jail, did not demonstrate deliberate indifference because statements of "attitude" and "intent" were "not sufficient to allege" that the physician actually refused to treat the plaintiff). Instead, Plaintiff vaguely alleges that the nurse failed to provide "proper" treatment without explaining why or how the treatment provided was improper. Plaintiff also states that his medication has not been "upgraded[,]" suggestively claiming that he has not received upgrades to the medication

---

[5] *See Baughman v. Hickman*, 935 F.3d 302, 310 (5th Cir. 2019) (dismissing, as conclusory, allegations that doctors "generally 'denied [the plaintiff] adequate pain medication' and 'access to physical therapy[.]'"); *Rombach v. Culpepper*, 2021 WL 2944809, at *4 (5th Cir. July 13, 2021) (observing that a "plaintiff must prove 'objective exposure to a substantial risk of serious harm' —that is, the existence of a serious medical need; the official's subjective knowledge of his substantial risk; and the official 'disregard[ed] that risk by failing to take reasonable measures to abate it.'").

[6] *See also Vessell v. Myles*, 781 F. App'x 355 (5th Cir. 2019) ("While Vessell argues that he continued to experience pain and swelling, Myles's unsuccessful treatment and Vessell's disagreement with the treatment are insufficient to demonstrate deliberate indifference.").

he *did* receive. [doc. # 5, p. 8]. In this respect, Plaintiff simply disagrees with the medical care he received.[7,8]

Finally, Plaintiff appears to allege that after he met with the doctor and nurse when he arrived at RDC, and after he failed to receive the care he desired, he "took the step to write a medical request," which was ignored. [doc. # 5, p. 7]. Plaintiff, however, does not identify a responsible defendant.

### C. Warden Hedgemon, Warden Russell, and Captain Barnes

Plaintiff "wrote to Warden Jonny Hedgemon and Warden Robert Russell, but [he] never received a response." [doc. # 5, p. 7]. He "talked to the captain and deputies[,]" attempting to obtain medical care, but they "cursed [him] out and threatened [him][.]"[9] [doc. #s 5, p. 7; 9, p. 2].

First, to the extent Plaintiff faults defendants for failing to respond to his requests, he does not state a plausible claim. A prisoner does "not have a constitutional right to have his grievances resolved in his favor or to have his claims reviewed pursuant to a grievance process that is responsive to his perceived injustices . . . ." *Burgess v. Reddix*, 609 F. App'x 211 (5th Cir.

---

[7] The undersigned instructed Plaintiff to "describe all medical care, treatment, medications, medical visits/appointments, evaluations, and/or equipment that he received for the medical needs he mentions in this complaint, and state when he received the care/treatment." [doc. # 8, p. 2]. Plaintiff did not comply with this instruction.

[8] *See Frazier v. Keith*, 707 F. App'x 823, 824 (5th Cir. 2018) (finding no deliberate indifference where medical staff responded to the plaintiff's complaints and provided consistent care and medication, even though the plaintiff disagreed with the extent and form of treatment); *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992) (finding that an inmate received adequate care, even though the treatment may not have been the best, and that any deficiencies in treatment were minimal; moreover, the plaintiff's continuing pain, in and of itself, did not demonstrate that a constitutional violation occurred).

[9] Construing Plaintiff's pleading liberally, the undersigned presumes that by "the captain," Plaintiff refers to Captain Barnes.

11

2015); *see Alexander v. Texas Dep't of Criminal Justice*, 2020 WL 826452, at *2 (5th Cir. Feb. 20, 2020) (affirming dismissal of a claim that grievances were mishandled or improperly denied because "prisoners have no due process rights in the inmate grievance process.").

Second, Plaintiff fails to plead a constitutional violation to the extent he faults defendants for failing to provide or arrange medical care. While not dispositive, Plaintiff does not allege that the defendants to whom he directed requests were personally involved in failing to provide the care he sought. He alleges that he directed requests to the defendants, but he does not allege that the defendants received and read his requests.[10]

Of greater import, and even assuming the defendants received and read Plaintiff's requests for care, Plaintiff does not allege what he told or requested from the defendants. In his attached requests, he vaguely stated that he wrote to Hedgemon and Russel about his "health issues." [doc. # 1-2, pp. 1, 2, 4]. Likewise, he does not specify what he stated or requested from Captain Barnes either. Like his claims above against the unidentified doctor and nurse, he does not state what his specific medical needs were when he requested care. Absent more, he does not plausibly allege that the defendants knew of a substantial risk of serious harm.

The Court should dismiss these claims.

---

[10] *See Ball v. LeBlanc*, 792 F.3d 584, 595 (5th Cir. 2015) ("[A] prison administrator who has received an administrative remedy request is not necessarily made aware, without factual corroboration, that there is a substantial risk of serious harm."); *Cox v. Irby*, 281 F. App'x 390, 391 (5th Cir. 2008) (reasoning that even though the plaintiff "may have put Warden Irby on notice that his needs for medication and a wheelchair were not being met, [] he did not show that the warden was personally involved in his medical care . . . ."); *Ornelas v. Hamilton*, 2021 WL 4618465, at *2 (5th Cir. Oct. 6, 2021) (finding that a defendant was not aware of an excessive risk to the plaintiff where the plaintiff alleged that he sent letters to the defendant reporting abuse and asking for help because there was no allegation that the defendant saw or received the letters).

### 3. Conclusory Claims

As above, in Plaintiff's third pleading he appears to attempt to explain the allegations in his second pleading concerning lack of responses to his grievances and requests. [doc. # 5, p. 3]. Once more for context, the undersigned presents the allegations verbatim: "I have been writing Request forms, and Nov the 21, 2022 about my situations about addresses, Transfer, and my medical condation for me not been homeless and for me to get the right benefits, They have not even answer the Emergency A.R.P. Kiosk or any request form on there since Nov 21, 2022. So I am bring everything to you all, they do not care at all, and talks to you crazy and threat to lock you down for them not doing they job. [sic]." *Id.*

Plaintiff, however, does not identify who "they" are and therefore does not identify a responsible defendant. Moreover, the terse, jumbled allegations simply invite speculation and do not provide enough detail or clarity to state plausible constitutional violations. Accordingly, the Court should dismiss these claims.

### 4. Transfer

Plaintiff asks the Court to transfer him to a different facility. [doc. # 5, p. 4]. A prisoner, however, has no constitutional right to be housed in any particular facility or transferred from one facility to another, even if conditions and amenities in one may be preferable to another. *Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983); *Fuselier v. Mancuso*, 354 F. App'x 49, 2009 WL 3780729, at *1 (5th Cir. Nov. 12, 2009). "The Due Process Clause does not, by itself, endow a prisoner with a protected liberty interest in the location of his confinement." *Yates v. Stalder*, 217 F.3d 332, 334 (5th Cir. 2000); *Meachum v. Fano*, 427 U.S. 215, 225 (1976) ("[T]he State may confine [a prisoner] and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution."); *McKune v. Lile*, 536 U.S.

13

24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise.").

Moreover, in Louisiana, "any individual subject to confinement in a state adult penal or correctional institution shall be committed to the Department of Public Safety and Corrections and not to any particular institution within the jurisdiction of the department. The secretary of the department may transfer an inmate from one such facility to another, insofar as the transfer is consistent with the commitment and in accordance with treatment, training, and security needs established by the department." LA. REV. STAT. §15:824(A).

Here, as Plaintiff has no federal constitutional right to be transferred to, or confined in, a place of his choosing, and because Plaintiff's placement lies solely in the purview of the Department of Public Safety and Corrections, the Court should dismiss his request for a transfer.

**5. Limitation on Recovery Under 42 U.S.C. § 1997e(e)**

Apart from seeking transfer, Plaintiff seeks only monetary relief.

Under 42 U.S.C. § 1997e(e), "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)." "[I]t is the nature of the relief sought, and not the underlying substantive violation, that controls: Section 1997e(e) applies to all federal civil actions in which a prisoner alleges a constitutional violation, making compensatory damages for mental or emotional injuries non-recoverable, absent physical injury." *Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005). "The 'physical injury' required by § 1997e(e) 'must be more than de minimus [sic], but need not be significant.'" *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (*quoting Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)).

14

Here, Plaintiff "brought" this action when he was incarcerated. With respect to his remaining claims, he seeks monetary compensation for only mental, emotional, or de-minimis physical injuries.

The undersigned construes Plaintiff's hackneyed phrase, "pain and suffering," as an allegation of at best mental or emotional injury unaccompanied by greater-than-de-minimis physical pain. *See Herron v. Patrolman No. 1*, 111 F. App'x 710, 713 (5th Cir. 2004) (holding that a "temporary increase of pain . . . is at most a *de minimis* injury that will not support a claim of mental or emotional suffering."). Further, Plaintiff only attributes his pain to the alleged lack of medical care discussed above; he does not allege that he suffered greater-than-de minimis physical injury from any of the actions or omissions comprising his remaining claims.

Overall, Plaintiff does not allege that he suffered a greater-than-de-minimis physical injury or any other injury compensable by monetary relief. Accordingly, the Court should dismiss his request for compensatory relief. As Plaintiff does not seek any cognizable relief for his remaining claims[11]—including his claims concerning psychiatric care, conditions of confinement, threats, failure to answer grievances or requests to his satisfaction, and failure to follow guidelines—the Court should dismiss them.

### Recommendation

For the reasons above, **IT IS RECOMMENDED** that Plaintiff Jimmy Ray Mills' claims be **DISMISSED** as frivolous and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another

---

[11] As above, the undersigned recommends dismissing Plaintiff's request for a transfer.

15

party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Monroe, Louisiana, this 13th day of February, 2023.

_____
Kayla Dye McClusky
United States Magistrate Judge